IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | | |
|---|---|---|
| CAMELBACK PROPERTIES, a partnership, ) | | |
| TERRY WILBOURN and JAMES LANTZ, Partners, ) | | Case No. 10 cv 01467 |
| ) | | |
| Plaintiff, ) | | Hon. P. Michael Mahoney |
| ) | | |
| v. ) | | U.S. Magistrate Judge |
| ) | | |
| PHOENIX INSURANCE COMPANY, ) | | |
| a TRAVELERS COMPANY, ) | | |
| ) | | |
| Defendant. ) | | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Motion to Bar Expert Testimony. This suit is a declaratory judgment action arising from the damage caused by a water-pipe burst on the second floor of a commercial building located in McHenry, Illinois ("the Building"). Defendant, Phoenix Insurance Company ("Phoenix"), issued an insurance policy to Plaintiff, Camelback Properties ("Camelback"), regarding the property at issue in this case. Camelback submitted an insurance claim to Phoenix for the damage, which Phoenix denied.

Camelback asserts that the policy covers the damage resulting from the pipe burst. Phoenix has filed an affirmative defense arguing that the policy's "vacancy exclusion" bars coverage because the property was "vacant" at the time of damage.

Drafted by Phoenix, the insurance policy agreement states that the company "will not pay for any loss . . . if the building where damage or loss occurs has been 'vacant' for more than 60

1

consecutive days before that loss or damage occurs." (Pl.'s Exh. I, p. 38). The agreement then defines "vacant" as follows:

> (2) When this policy is issued to the owner or general lessee of a building, ["building"] means the entire building. Such building is vacant unless at least 31% of its total square footage is:
>
>> (a) [r]ented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary business operations; or
>>
>> (b) [u]sed by the building owner to conduct customary business operations.
>
> (*Id.*, p. 39).

If thirty-one percent of the entire building was *not* used for customary business operations at the time of the damage, the building was "vacant" and there would be no insurance coverage. In this case, the issue of "building usage" will turn on the question of how much of the building's total common areas Camelback used for customary business operations.

Phoenix has proffered real-estate professional, Mr. Scott Fithian, as an expert witness to testify at trial. Defendant claims that Mr. Fithian's testimony would be helpful to the trier of fact in determining how much of the common area was used by Camelback by disclosing how common areas are treated in the real estate industry when calculating occupancy in commercial buildings.

Camelback has challenged the expert on the alleged basis that his testimony would not be relevant as to how the plaintiff has actually used the common areas of the building. Camelback asserts that by introducing a real estate expert to testify regarding the unambiguous terms of an

insurance industry contract, Phoenix attempts to improperly incorporate a real estate standard into the insurance policy.

      Federal Rule of Evidence 702 states:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.
>
> Fed. R. Evid. 702.

The Supreme Court has tasked district courts with the responsibility of acting as gatekeepers to exclude unreliable expert testimony when applying Rule 702. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Daubert* is interpreted as requiring the court to conduct a two-step analysis when a party seeks to introduce expert testimony. *See Wintz v. Northrup Corp.*, 110 F.3d 508, 512 (7th Cir. 1997); *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 614-116 (7th Cir. 1993). In the first step of this analysis, the district court must "consider whether the testimony has been subjected to the scientific method; ruling out 'subjective belief or unsupported speculation.'" *Porter,* 9 F.3d 607 at 614 (citation omitted). At the second step of the analysis the court must determine whether the proffered evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue. *Id.* Step two requires the

district court to consider whether the proposed scientific testimony fits the issue to which the expert is testifying. *Daubert*, 509 U.S. at 591.

The defense has informed this court that their proffered expert, Mr. Fithian, is a real estate broker, developer, and consultant with an MBA from Harvard University, and that he has fifteen years of experience in commercial real estate leasing and sales. Additionally, he has been previously named as Chicago's top retail leasing owners' representation broker by the Chicago Association of Realtors ("CAR"). He is an active member of CAR's Commercial Forum Division and serves on CAR's Grievance Committee. (*See* Ex. A, p. 1). These facts are undisputed by the parties. Although the proffered expert does not claim to have any expert knowledge of insurance policy agreements, Mr. Fithian's expertise in the field of commercial real estate cannot be questioned.

According to Defendant, Mr. Fithian used the Building Owners and Managers Association's ("BOMA") "Standard Method of Floor Measurement for Office Buildings" ("Standard Method") to calculate the total square footage of the Building, including its common areas. (*See* Ex. A, p. 2) His calculation of the total square footage of the Building is undisputed. Mr. Fithian next reveals how the commercial real estate industry treats the allocation of common areas to decide pre-determined pro-rata "usage." Presumably, Mr. Fithian would testify that the real estate industry standard of allocating common areas in commercial buildings establishes the Building was "vacant" at the time of the damage.

The *Daubert* Step-One analysis requires this court to determine "whether [this] testimony has been subjected to the scientific method; ruling out 'subjective belief or unsupported

speculation.'" *Porter,* 9 F.3d 607 at 614 (citation omitted). On its face, Mr. Fithian's testimony may appear to meet this standard; his calculation of the Building's square footage is detailed, precise, and undisputed, and he appears to use reliable real estate industry standards to reach his conclusions. Nevertheless, the cracks begin to appear when his otherwise sound, real estate methodology is applied to the language in the vacancy exclusion of an insurance policy contract: Mr. Fithian's calculations are offered to show exactly how much of the Building was actually used by Camelback to conduct its customary business operations.

The clear and unambiguous language of the policy states that the "[B]uilding is vacant unless at least 31% of its total square footage is . . . [r]ented . . . and used . . . to conduct . . . customary business operations." (Ex. I, p. 39). Here, "used" is the critical word at issue and it should be given its plain meaning. *See Utility Audit, Inc. v. Horace Mann Service Corp.* 383 F.3d 683, 687 (7th Cir. 2004).

If the parties had intended the Building's usage to be allocated by a pro-rata share they could have included that language in the policy. For example, the policy could have read: "Any use of the entire building shall be calculated and automatically allocated in accordance with the Building Owners and Managers Association's ("BOMA") Standard Method of Floor Measurement for Office Buildings." Yet, the policy does not contain any such language.

Mr. Fithian's methodology in determining the common area usage may be very reliable in the context of real estate rentals and sales. Yet, Defendant has not provided any legal support or precedent that would allow this court to properly incorporate a real estate industry standard, such as the BOMA code, into an insurance industry contract. Neither does the expert claim that

5

the BOMA standards are commonly used in the insurance industry. Although the two industries may share many similarities, they are separate and distinct and must be treated as such.

The BOMA "Standard Method" is therefore not the appropriate methodology to construe actual "usage," as it is written in the insurance policy contract. Because it is not the appropriate methodology for interpreting the language of an insurance contract, Mr. Fithian's expert testimony as to how many square feet the real estate industry would allocate to Camelback is irrelevant to the issue at hand.

Here, the only issue is how much of the entire Building Camelback *actually* used. Mr. Fithian may be able to testify as to real estate industry standards, but he has not represented that he has any personal knowledge of Camelback's actual usage of the Building for business purposes. Without personal knowledge, any testimony Mr. Fithian might supply concerning Camelback's actual usage would be speculative in nature. Thus, the court finds Defendant's proffered expert testimony fails the first step analysis.

Mr. Fithian's testimony cannot satisfy *Daubert's* second step of analysis. If the issue is how much of the Building was used by the Plaintiff for customary business operations and if the proffered expert has no opinion of the Plaintiff's actual usage, the expert testimony would not assist the trier of fact in understanding the evidence or in determining the fact in issue at *Daubert's* Step Two.

For the foregoing reasons, Plaintiff's Motion to Bar Expert Testimony is granted.

        **ENTER:**

        */s/ P. Michael Mahoney*

        **P. MICHAEL MAHONEY, MAGISTRATE JUDGE**

        **UNITED STATES DISTRICT COURT**

**DATE:** April 12, 2013